## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Brian Lee Flowers,

                Petitioner,                **Civil File No: 13-cv-1508 (JNE/SER)**

v.

Tom Roy,

                Respondent.            **REPORT AND RECOMMENDATION**

---

Bradford W. Colbert, Esq., Legal Assistance to Minn. Prisoners, William Mitchell College of Law, 875 Summit Avenue, Room 254, St. Paul, Minnesota 55105, for Petitioner.

J. Michael Richardson, Esq., Hennepin County Attorney's Office, 300 South Sixth Street, Suite C-2000, Minneapolis, Minnesota 55487, for Respondent.

---

STEVEN E. RAU, United States Magistrate Judge

Brian Lee Flowers ("Flowers") was convicted of two counts of first-degree premeditated murder, two counts of first-degree murder while committing or attempting to commit aggravated robbery, and "two counts of second-degree intentional murder, a lesser-included offense." *State v. Flowers*, 788 N.W.2d 120, 128 (Minn. 2010). Flowers is currently serving two consecutive terms of life without parole. (Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ¶ 5, "Petition") [Doc. No. 1].

Flowers's Petition for habeas relief under 28 U.S.C. § 2254 is before this Court. (Pet.). Flowers argues he is entitled to a writ of habeas corpus because he was a juvenile at the time he committed the crimes, and his mandatory sentence of life without parole is a violation of the Eighth and Fourteenth Amendments under *Miller v. Alabama*, 132 S. Ct. 2455, 2469 (2012).

(Pet. ¶ 12).   Respondent argues that *Miller* should not be applied to Flowers's sentence retroactively.  (State's Mem.) [Doc. No. 8 at 3–7].

This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and District of Minnesota Local Rule 72.1.  For the reasons stated below, the Court recommends denying Flowers's Petition and dismissing the action.

## I.      BACKGROUND

The Minnesota Supreme Court detailed the facts of Flowers's crime, its ensuing investigation, and his trial in detail.  *See Flowers*, 788 N.W.2d at 122–28.  Because Flowers's Petition rests on a legal issue regarding his sentence, those details are not repeated.  The essential facts are:  Flowers was sixteen years old at the time of the indictment and was convicted after a jury trial.  *Flowers*, 788 N.W.2d at 122.  "The Hennepin County District Court sentenced Flowers to two consecutive terms of life in prison . . ." without parole for the premeditated murder of two individuals.  *Id.*; (Pet. ¶ 5).[1]

Flowers appealed, arguing

(1) the [district] court violated his Fifth Amendment rights by erroneously admitting into evidence the first statement he gave to the police; (2) the [district] court erred when it failed to instruct the jury on his defense theory; and (3) the evidence was insufficient for a finding of guilt beyond a reasonable doubt.

*Id.*  The Minnesota Supreme Court affirmed Flowers's conviction on September 16, 2010.  *Id.* at 120, 122.  The United States Supreme Court denied Flowers's petition for certiorari on May 16, 2011.  *Flowers v. Minnesota*, 131 S. Ct. 2460 (2011).  Flowers did not file a post-conviction petition.  *See* (Pet. ¶¶ 10, 12(d), 13–14).

---

[1]      Although not specifically described by the Petition or the Minnesota Supreme Court, Flowers's sentence apparently flows from Minnesota Statute section 609.106, subdivision 2(1), which requires a court to sentence a person who is convicted of first-degree premeditated murder under section 609.185(a)(1) to life without parole.

After the conclusion of Flowers's state court proceedings, two cases were decided with the potential to affect Flowers's sentence.  In June 2012, the United States Supreme Court decided *Miller v. Alabama*, holding "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."  132 S. Ct. at 2469.  A sentencing authority is required to consider "how children are different and how those differences counsel against irrevocably sentencing them to a lifetime in prison."  *Id.*  The Supreme Court did not prohibit all life-without-parole sentences for juveniles.  *Id.*  In fact, it stated that such a sentence may be appropriate for a juvenile in some homicide cases.  *Id.*  But the life-without-parole sentence cannot be imposed on a juvenile under a **mandatory** sentencing scheme.  *Id.*

Nearly a year later, the Minnesota Supreme Court considered whether *Miller* can be applied retroactively.  *Chambers v. State*, 831 N.W.2d 311 (Minn. 2013).  In *Chambers,* Timothy Chambers ("Chambers")—a juvenile—was sentenced to life without parole "under a **mandatory** sentencing scheme that allowed no discretion or consideration of [his] age or the unique characteristics of his background or his offense."  *Id.* at 323 (citation omitted) (emphasis added). *Miller* was decided while Chambers's second post-conviction petition, which raised Eighth Amendment issues, was on appeal before the Minnesota Supreme Court.  *Id.* at 317–18.  The Minnesota Supreme Court ordered supplemental briefing to address *Miller*'s impact on the *Chambers* case.  *Id.* at 318.  The Minnesota Supreme Court analyzed *Miller*'s retroactivity under the framework provided in *Teague v. Lane*, 489 U.S. 288, 300–10 (1989), and its progeny.  *Id.* at 323–331.  The Minnesota Supreme Court determined that *Miller* was not retroactive because *Miller* announced a new procedural rule, and it did not qualify for either of the two exceptions described in *Teague* permitting retroactive application.  *Id.* at 331.

Flowers filed his Petition for habeas relief before this Court on June 20, 2013, reciting only one ground for relief: that his mandatory sentence of life without parole is invalid under the United States Supreme Court's decision in *Miller v. Alabama*. (Pet. ¶ 12). Respondent Tom Roy (the "State") filed an answer and memorandum, arguing that retroactive application of *Miller* is not appropriate. (State's Answer to Pet. for Writ of Habeas Corpus) [Doc. No. 7]; (State's Mem.). The State also filed an appendix containing relevant court decisions. (Appendix) [Doc. No. 11]. Flowers filed a reply and exhibits, which include the Eighth Circuit's decision in *Johnson v. United States*, 720 F.3d 720 (8th Cir. 2013), and the United States' brief in *Johnson*. (Pet'r's Reply to Resp.'s Answer, "Flowers's Reply") [Doc. No. 14]; (Ex. List) [Doc. No. 15].

## II.    DISCUSSION

### A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes the standards that govern substantive review of a petitioner's habeas claims. The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Eighth Circuit has explained:

> A state court decision is "contrary to" clearly established federal law if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on

4

> a set of materially indistinguishable facts." A state court "unreasonably applies"
> Supreme Court precedent if it "identifies the correct governing legal principle
> from th[e] [Supreme] Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case."

*Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)).

A writ of habeas corpus can also be granted if the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be available if the conviction at issue is based on findings of fact that could not reasonably be derived from the state court evidentiary record. *See id.*

Needless to say, a federal district court is not allowed to conduct its own *de novo* review of a prisoner's constitutional claims. *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter."). "AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt . . . ." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and quotations omitted). Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. *See, e.g.*, *Harrington v. Richter*, 131 S. Ct. 770, 785–86 (2011) (explaining the burdens faced by a federal habeas petitioner seeking relief based on an alleged error by the state court). Moreover, the petitioner must show that the error is one that is actionable under § 2254(d). *See id.* The petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

**B.      Procedural Default**

A federal district court may entertain a state prisoner's application for a writ of habeas corpus only when the petitioner has exhausted the state court remedies.  28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Gill v. Swanson*, No. 07-4555 (JMR/AJB), 2008 WL 4371378, at *2–3. (D. Minn. Sept. 22, 2008).  The exhaustion requirement has been summarized as follows:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust
> available state remedies . . . , thereby giving the State the opportunity to pass upon
> and correct alleged violations of its prisoners' federal rights.  To provide the State
> with the necessary opportunity, the prisoner must fairly present his claim in each
> appropriate state court (including a state supreme court with powers of
> discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations and quotations omitted).  Accordingly, to exhaust his state court remedies, a petitioner must fairly present his constitutional claims to the highest available state court before seeking relief in federal court.  *O'Sullivan*, 526 U.S. at 845.  "A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999) (citation omitted).  Thus, a claim has not been fairly presented if a state appellate court expressly declines to address it on the merits because the petitioner violated state procedural rules.  *Hall v. Delo*, 41 F.3d 1248, 1250 (8th Cir. 1994).

When a petition contains claims that have not been fairly presented, a court must determine whether state procedural rules would allow hearing on the merits.  *Gill*, 2008 WL 4371378, at *3 (citations omitted).  If the state's procedural rules preclude a hearing on the merits, the petitioner has procedurally defaulted and is procedurally barred from federal habeas

relief unless either cause and prejudice or a miscarriage of justice can be shown. *See*, *e.g.*, *id.* (citing *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997)).

Generally, "[w]hen a state court remedy is available for a state prisoner's unexhausted claim, the federal habeas court must defer action until the claim is exhausted, either by dismissing the federal petition without prejudice or by using the 'stay and abeyance' procedure . . . ." *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005). When a petitioner has not exhausted the state court remedies for a claim and state procedural rules preclude any further attempts to satisfy the exhaustion requirement as to that claim, then the claim is not truly unexhausted; rather, the claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *McCall*, 114 F.3d at 757.

Minnesota law provides that all matters raised in a petitioner's direct appeal and all claims known but not raised are barred from consideration in a subsequent post-conviction petition. *McCall*, 114 F.3d at 757 (citing *State v. Knaffla*, 243 N.W.2d 737, 741 (1976)). A petitioner can avoid the state court procedural bar only by demonstrating cause for default and actual prejudice as a result of the violation of federal law or by showing actual innocence (also called the miscarriage of justice exception). *Schlup v. Delo*, 513 U.S. 298, 314–17 (1995); *McCall*, 114 F.3d at 758.

C.    **Exhaustion**

The Court must first determine whether Flowers exhausted his state court remedies. 28 U.S.C. § 2254(b); *Baldwin*, 541 U.S. at 29. Flowers did not seek review of his life-without-parole sentence on direct appeal because *Miller* was decided after his appeal. (Pet. ¶ 12(c)). Flowers did not seek post-conviction relief because the Minnesota Supreme Court held that *Miller* could not be applied retroactively, and therefore, any post-conviction petition by Flowers

7

on that ground would be futile.  (*Id.* ¶ 12(b) (citing *Chambers*, 831 N.W.2d 311)).  The State agrees that any post-conviction petition on this ground would be futile and "antithetical to judicial economy . . . ." (State's Mem. at 2).

The United States Supreme Court has cautioned that a petitioner may not fail to raise a claim for relief in the state courts just because "he thinks they will be unsympathetic to the claim." *Engle v. Isaac*, 456 U.S. 107, 130 (1982).  But the Eighth Circuit has said that despite *Engle*, it has "recognized the futility of requiring a habeas petitioner to exhaust state remedies when the state court has recently decided the same legal question adversely to the petitioner under nearly identical facts." *Padavich v. Thalacker*, 162 F.3d 521, 522 (8th Cir. 1998) (deciding "Padavich's appeal on the merits because the exhaustion rule is not a rule of jurisdiction, and sometimes the interests of comity and federalism are better served by addressing the merits." (citations and quotations omitted)).

Because Flowers has not raised his claim with the Minnesota state courts, his claim is not exhausted. *See O'Sullivan*, 526 U.S. at 845.  Further state-court review appears to be available to Flowers through Minnesota's post-conviction proceedings. *See* Minn. Stat. § 590.01, subdiv. 1(1) (permitting post-conviction relief where "the conviction obtained or the sentence or other disposition made violated the person's rights under the Constitution or laws of the United States or of the state"); subdiv. 4(3) (permitting a post-conviction petition more than two years after appellate disposition when the petition is based on, *inter alia*, a new interpretation of federal constitutional rights by the United States Supreme Court).

Nevertheless, recently the Minnesota Supreme Court decided the same legal question Flowers presents here: whether *Miller* can be applied retroactively. *Compare Chambers*, 831 N.W.2d at 323–31 *with* (Pet. ¶ 12).  Additionally, the Minnesota Supreme Court's decision was

made under nearly identical facts to those present in Flowers: both individuals seeking retroactive application of *Miller* were juveniles at the time of their crimes, and both were sentenced to life without parole under a mandatory sentencing scheme. *Compare Chambers*, 831 N.W.2d at 316–17 *with Flowers*, 788 N.W.3d at 122, 128 *and* (Pet. ¶ 5). Therefore, the Court agrees with the parties that, in light of the Minnesota Supreme Court's holding in *Chambers*, any post-conviction review of Flowers's life-without-parole claim would be futile. *See Padavich*, 162 F.3d at 522. In the interest of comity and federalism, Flowers's claim will be addressed on the merits. *See id*.

### D. Application of *Miller* to Flowers's Sentence

Typically, a court considering whether a United States Supreme Court case applies to a habeas petitioner retroactively must consider both the applicability of 28 U.S.C. § 2254(d) and the analysis required under *Teague*. *Horn v. Banks*, 536 U.S. 266, 272 (2002). As stated above, Flowers did not seek review of his sentence on direct appeal or in post-conviction proceedings. *See* (Pet. ¶ 12(b)–(d)). Therefore, there is no Minnesota appellate court decision that addresses the implications of *Miller* to Flowers's sentence. The State presumes the § 2254(d)(1) standard applies *Chambers*—the case that makes Flowers's exhaustion requirement futile. (State's Mem. at 4). But where, as here, there is no state court decision in the petitioner's case for a court to use in its analysis under § 2254(d)(1), the Eighth Circuit suggests proceeding directly to the merits of the petition. *See generally Padavich*, 162 F.3d 521 (acknowledging futility under a previous state court case and considering the merits of the habeas petition without discussing the case under which it found further state court remedies futile). Therefore, the Court will not conduct a § 2254(d)(1) analysis. Instead, the Court analyzes whether the rule announced in *Miller*—that a sentencing scheme that mandates a life-without-parole sentence violates the

Eighth Amendment when applied to juveniles—should be applied to Flowers retroactively under

*Teague*. *See Miller*, 132 S. Ct. at 2469.

    *Teague* describes a three-part test to determine retroactivity. *Caspari v. Bohlen*, 510 U.S.

383, 390 (1994). Taken together, the first two steps determine whether the rule is "[a] new rule

of constitutional criminal procedure . . . ." *Teague*, 489 U.S. at 310; *see also Beard v. Banks*,

542 U.S. 406, 411 (2004) (describing the first two steps of the *Teague* analysis as determining

"whether the rule is actually 'new.'").

> First, the court must ascertain the date on which the defendant's conviction and
> sentence became final for *Teague* purposes. Second, the court must survey the
> legal landscape as it then existed, and determine whether a state court considering
> the defendant's claim at the time his conviction became final would have felt
> compelled by existing precedent to conclude that the rule [he] seeks was required
> by the Constitution.

*Caspari*, 510 U.S. at 390.

    If the rule is old, it applies retroactively. *See Whorton v. Bockting*, 549 U.S. 406, 416

(2007) (citing *Griffith v. Kentucky*, 479 U.S. 314 (1987)). In such a case, a third step is not

necessary. If the rule is new, it does not apply retroactively unless one of two *Teague* exceptions

apply. *Caspari*, 510 U.S. at 390. Thus, the third *Teague* step—determining whether either

exception applies—is necessary to make the ultimate determination of whether the new rule

should be applied retroactively. *Id.*

    Under the first exception, a new rule may be applied retroactively if the new rule either

(1) prevents the state from prohibiting "a class of private conduct" or (2) "prohibit[s] a certain

category of punishment for a class of defendants because of their status or offense." *Saffle v.*

*Parks*, 494 U.S. 484, 494–95 (1990) (citations and quotations omitted).[2] Under the second exception, retroactive application is appropriate if the new rule is a "watershed rule[] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* If either exception is met, the rule may be applied retroactively. *Caspari*, 510 U.S. at 390.

Several courts have considered the retroactivity of *Miller* without a clear consensus. *See Martin v. Symmes*, No. 10-cv-4753 (SRN/TNL), 2013 WL 5653447, at *14 (D. Minn. Oct. 15, 2013) (citing cases). The Eighth Circuit has not determined whether *Miller* is retroactive. *Id.* at *15.[3] In the context of § 2254 habeas petitions, this District has determined that *Miller* cannot be applied retroactively. Report & Recommendation at 24–25, *Thompson v. Roy*, No. 13-cv-1524 (PJS/JJK) [Doc. No. 13] ("*Thompson* R&R"); *Martin*, 2013 WL 5653447, at *17. As described above, the Minnesota Supreme Court has also determined that *Miller* cannot be applied retroactively. *See Chambers*, 831 N.W.2d at 331.

The Court agrees with its colleagues in this District that, for the purposes of a § 2254 habeas petition, *Miller* is not retroactive.

---

[2]     More broadly, the Supreme Court has discussed this exception in terms of "substantive categorical guarantees accorded by the Constitution[]" and given "prohibiting a certain category of punishment for a class of defendants because of their status or offense[]" as an example of what the exception covers. *See Penry v. Lynaugh*, 492 U.S. 302, 329–30 (1989) *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002). But because the retroactivity analysis in criminal cases often focuses on the class of defendants, the type of crime, and the punishment, the Court uses that language for the sake of clarity.

[3]     As argued by Flowers, a divided Eighth Circuit panel found that a petitioner seeking permission to file a successive habeas petition under 28 U.S.C. § 2255 made a *prima facie* showing that *Miller* announced a new rule that applied retroactively to cases on collateral review. *Johnson*, 720 F.3d 720; *see also* (Flowers's Reply at 12). The Eighth Circuit cautioned that the district court should not defer to its preliminary determination. *Id.* at 720–21. Unlike in Flowers's case, in *Johnson*, both the government and the petitioner agreed that *Miller* applies retroactively. *Id.* at 722. Since that decision, resentencing has been ordered. Order Dated Oct. 22, 2013, *United States v. Johnson*, Criminal No. 02-013 (3) (PJS/FLN) [Doc. No. 274]. Although the court stated resentencing was required by *Miller*, *Miller*'s retroactivity was not discussed.

1.      **Whether *Miller* Announces a New Rule**

The parties agree that *Miller* announced a new rule and therefore satisfied the first two elements of the *Teague* analysis.   (State's Mem. at 4); (Flowers's Reply at 8–9); *see also Caspari*, 510 U.S. at 390.   The Court agrees with the parties that *Miller* announced a new rule, and therefore engages in only a short analysis.

First, Flowers's conviction and sentence became final on May 16, 2011, when the United States Supreme Court denied his petition for certiorari.   *Flowers*, 131 S. Ct. 2460; *see also Griffith*, 479 U.S. at 321 n.6 (noting that final means "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." (citations omitted)).   *Miller* was decided on June 25, 2012, after Flowers's conviction and sentence became final.   *See Miller*, 132 S. Ct. at 2455.

Next, whether precedent existing at the time Flowers's conviction and sentence became final would have compelled a state court considering defendant's claim that the Constitution required the rule in *Miller* is analyzed.   *Caspari*, 510 U.S. at 390.[4]   The *Miller* decision relies on the United States Supreme Court's decisions in two lines of cases.   *Miller*, 132 S. Ct. at 2463.   In the first line of cases, the Supreme Court categorically banned "sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty." *Id.*   Of these cases, those discussing punishment of juveniles were limited to banning the death penalty for juveniles (*Roper*) and banning a life-without-parole sentence for juveniles who were convicted of non-homicide offenses (*Graham*). *Id.* (citing *Graham v. Florida*, 560 U.S. 48, 82

---

[4]      Flowers argues that precedent did not dictate the new rule in *Miller*.   (Flowers's Reply at 8).  The State did not address this issue. *See generally* (State's Mem.).

(2010); *Roper v. Simmons*, 543 U.S. 551, 578 (2005)).[5]  Given their limited holdings, these cases did not dictate the rule announced in *Miller*: that juveniles could not be sentenced to life without parole under a mandatory sentencing scheme.  *See Miller*, 132 S. Ct. at 2469; *see also In re Morgan*, 713 F.3d 1365, 1367 (11th Cir. 2013).

In the second line of cases, the Supreme Court required sentencers to make individual determinations when considering the death penalty, rather than imposing the death penalty under a mandatory sentencing scheme.  *Miller*, 132 S. Ct. at 2463–64.  But because this line of cases was limited to the imposition of the death penalty, and did not extend to the imposition of life without parole, they did not dictate *Miller*'s outcome.  *See Morgan*, 713 F.3d at 1367.

Because *Miller* was decided after Flowers's conviction and sentence became final and because the Supreme Court's precedents did not dictate the holding, *Miller* announced a new rule for purposes of retroactivity.  *See Caspari*, 510 U.S. at 390.  Traditionally, a new rule cannot be applied retroactively.  *Teague*, 489 U.S. at 310.  Therefore, the Court examines whether either *Teague* exception applies to *Miller*.  *See id.*; *Caspari*, 510 U.S. at 390.

### 2.     Whether the *Teague* Exceptions Demonstrate *Miller*'s Retroactive Applicability

#### a.     Whether *Miller* Announced a Substantive Rule

*Teague* provided two exceptions to the general rule prohibiting retroactivity.  *Teague*, 489 U.S. at 311.  The first exception applies where the new rule "places a class of private conduct beyond the State to proscribe, . . . , or addresses a substantive categorical guarantee accorded by the Constitution, such as a rule prohibiting a certain category of punishment for a

---

[5]     *Miller* also cited *Atkins v. Virginia*, 536 U.S. 304 (2002), which prohibited the death penalty from being imposed on a mentally disabled individual.  But because *Atkins* is not relevant to juveniles, the Court declines to address it here.

class of defendants because of their status or their offense." *Saffle*, 494 U.S. at 494 (citations omitted). This first exception is also described as a determination of whether the rule is considered substantive. *See Schriro v. Summerlin*, 542 U.S. 348, 351–52 (2004) (describing substantive rules as those that "narrow the scope of a criminal statute by interpreting its terms . . . as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish . . . ." (citations and quotations omitted)). If the new rule is substantive, then it applies retroactively. *Id.* at 351.[6] As the Fifth Circuit observed, the substantive nature of barring a penalty "appears to apply only when a new rule removes a particular punishment from the list of punishments that can be constitutionally imposed on a class of defendants . . . ." *Craig v. Cain*, No. 12-30035, 2013 WL 69128, at *1 (5th Cir. Jan. 4, 2013). If, however, the new rule is procedural, then it will generally not be applied retroactively. *Schriro*, 542 U.S. at 352. The Supreme Court has not retroactively applied rules where it altered the circumstances under which a penalty is imposed. *Craig*, 2013 WL 69128, at *2 (citing cases).

Flowers argues that *Miller* announces a substantive rule because it "prohibits a category of punishment—mandatory life without the possibility of parole—for a class of defendants— juvenile homicide offenders." (Flowers's Reply at 10 (citations and quotations omitted)). Flowers argues that just as *Roper* and *Graham* applied retroactively, *Miller* should as well. (*Id.*). The State argues *Miller* only changed the procedure leading to a life-without-parole sentence; it

---

[6] The Supreme Court characterizes a new substantive rule as a rule that is not subject to the *Teague* bar on retroactive application of procedural rules rather than a true exception to *Teague*. *Schriro*, 542 U.S. at 352 n.4. But for ease of reference, the Court will continue to refer to it as an exception.

did not "categorically bar a penalty for a class of offenders or a type of crime . . . ."  (State's Answer at 5 (quoting *Miller*, 132 S. Ct. at 2471; *Craig*, 2013 WL 69128, at *2)).

*Miller* specifically states that it "does not categorically bar a penalty for a class of offenders or type of crime—as, for example, [it] did in *Roper* or *Graham*."  *Miller*, 132 S. Ct. at 2471.  Consequently, the Supreme Court distinguished its holding in *Miller* from those in *Roper* and *Graham*.  In both *Roper* and *Graham*, the Supreme Court banned a penalty for a class of offenders:  In *Roper*, the Supreme Court banned the penalty of the death sentence for the class of offenders who were juveniles.  *Roper*, 543 U.S. at 578.  In *Graham*, the Supreme Court banned the penalty of life without parole as applied to an even more specific class of offenders: juveniles convicted of non-homicide offenses.  *Graham*, 560 U.S. at 82.[7]

Like *Roper* and *Graham*, *Miller*'s holding is limited to a class of offenders: it applies only to juveniles.  *Id.* at 2469.  The penalty at issue in *Miller* is life without parole.  *Id.*  But unlike *Roper* and *Graham*, *Miller* does not **bar** a penalty.  *See id.* at 2469.  *Miller* specifically stated that a sentencing authority **may** determine that the penalty—life without parole—is an appropriate punishment for a juvenile convicted of homicide.  *Id.*  *Miller* changed only the procedure by which that punishment is imposed: a sentencer must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."  *Id.*  In other words, what made the life-without-parole sentence unconstitutional for juveniles under *Miller* was its mandatory nature, not that it was applied to

---

[7]     Flowers also includes *Atkins* in his argument that *Miller* should be applied retroactively based on past, similar cases.  (Flowers's Reply at 10 (citations omitted)).  In *Atkins*, the Supreme Court held that the Eighth Amendment prohibited a mentally disabled individual from being sentenced to death.  *Atkins*, 536 U.S. at 321.  Because *Atkins* does not relate to juveniles, the Court does not discuss it in detail.  But it is similar to *Roper* and *Graham* in that it prohibits a punishment—the death penalty—for a class of offenders—mentally disabled individuals.  *Id.*

juveniles. *Id.* As noted above, where the Supreme Court has changed how a penalty is imposed, those rules have not been applied retroactively. *Craig*, 2013 WL 69128, at *2 (citing cases).

The plain language of the Supreme Court in *Miller*, as well as the Supreme Court's refusal to apply punishment procedures retroactively, demonstrates *Miller* announced a new procedural rule, and therefore cannot be applied retroactively. *See Schriro*, 542 U.S. at 352.

### b. Whether *Miller* Announced a Watershed Rule

The second *Teague* exception that would permit the Court to apply *Miller* retroactively to Flowers is if *Miller* announced a "watershed rule[] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle*, 494 U.S. at 495 (citations and quotations omitted). This exception is limited and "meant to apply only to a small core of rules requiring observance of those procedures that are implicit in the concept of ordered liberty." *Beard*, 542 U.S. at 417 (quotations and alterations omitted). A watershed rule either "must be necessary to prevent an impermissibly large risk of an inaccurate conviction . . . [or] must alter our understanding of the bedrock of procedural elements essential to the fairness of a proceeding." *Whorton*, 549 U.S. at 418 (citations and quotations omitted). Repeatedly, the Supreme Court has referred to *Gideon v. Wainwright*, where it held that a criminal defendant's right to counsel was fundamental and essential to fair trials, as an example of a rule that would fall under this exception. *Beard*, 542 U.S. at 417 (citing *Gideon v. Wainwright*, 372 U.S. 335, 344–45 (1963) (quotations omitted)). The Supreme Court noted in 2007 that "in the years since *Teague*, [it has] rejected every claim that a new rule satisfied the requirements for watershed status." *Whorton*, 549 U.S. at 418.

Flowers argues the rule in *Miller* should be considered a watershed rule because it "creates an impermissibly large risk that the sentence is inaccurate—that is, disproportionate and

unduly punitive." (Flowers's Reply at 14 (quotations omitted)).  The State argues that, as stated in *Chambers*, the rule is not a watershed rule because it only deals with sentencing, rather than guilt or innocence.  (State's Mem. at 6).

The Court agrees that *Miller*'s new rule is not "watershed" for the purposes of retroactivity.  An example of how the Supreme Court has handled a similar case is instructive.  In *Beard*, the Supreme Court considered whether its decisions in *Mills* and *McKoy*—which held that "capital sentencing schemes that require juries to disregard mitigating factors not found unanimously[,]" are invalid—could be applied retroactively.  *Beard*, 542 U.S. at 408 (referring to *McKoy v. North Carolina*, 494 U.S. 433 (1990); *Mills v. Maryland*, 486 U.S. 367 (1988)).  The Supreme Court found that *Mills* announced a new rule.  *Id.* at 416.  There was no argument that the first exception—that the rule was substantive, and therefore would be applied retroactively— applied to *Mills*.  *Id.* at 416–17; *see also Schriro*, 542 U.S. at 351–52; *Saffle*, 494 U.S. at 494.  The Supreme Court then analyzed whether the rule was considered "watershed."  *Beard*, 542 U.S. at 417–20.  The Supreme Court acknowledged that it was motivated in *Mills* and *McKoy* by its desire to avoid "potentially arbitrary impositions of the death sentence . . . ."  *Id.* at 419.  But it ultimately concluded that removing the arbitrary application for the death sentence was not sufficient meet the second *Teague* exception, and the new rule from *Mills* and *McKoy* "has none of the primacy and centrality of the rule adopted in *Gideon*."  *Id.* at 419–20 (internal citations and quotations omitted).

The rule in *Miller* likewise fails to meet the second exception required by *Teague* for retroactive application.  Like *Mills* and *McKoy*, *Miller* removed an arbitrary imposition of a punishment by requiring that the specific characteristics of the juvenile and his or her crime be considered with respect to a life-without-parole sentence.  *Miller*, 132 S. Ct. at 2468 (noting that

mandatory life without parole for a juvenile prevents a sentencer from considering the juvenile's "chronological age and its hallmark features . . ." as well as "the circumstances of the homicide offense . . . ."). And unlike *Gideon*, it does not have the "primacy and centrality" required to be considered a watershed new rule. *See Beard*, 542 U.S. at 419–20. Therefore, the new rule in *Miller* cannot be applied retroactively to Flowers under the second exception to *Teague*.

### 3. *Miller* Cannot Be Applied Retroactively to Flowers

In summary, the United States Supreme Court announced a new rule when it held that a sentencing scheme that dictates a mandatory sentence of life without parole for a juvenile violates the Eighth Amendment. *Miller*, 132 S. Ct. at 2469. The new rule is procedural, rather than substantive, and therefore cannot be applied retroactively under the first exception to *Teague*. *See Schriro*, 542 U.S. at 352. And because the new rule is not a watershed rule, it cannot be applied retroactively under the second *Teague* exception. *See Saffle*, 494 U.S. at 495. *Miller* does not apply retroactively to Flowers.

### E. Flowers's Additional Arguments

Flowers makes two additional arguments in support of his petition. First, he argues that because the Supreme Court retroactively applied *Miller* to the companion case, *Jackson v. Hobbs*, which was before it on collateral review, this Court should retroactively apply *Miller* to Flowers. (Flowers's Reply at 5–6); *see also Jackson v. Hobbs*, 132 S. Ct. 548 (2011) (granting certiorari and stating that the case will be argued with *Miller*). Second, Flowers argues that because the two strands of cases on which the *Miller* decision relies have been applied retroactively, *Miller* should likewise apply retroactively. (Flowers's Reply at 6–8). The Court considers each argument in term, and finds them both without merit.

### 1.      Applicability of *Miller*'s Companion Case

In support of his argument that because the *Miller* decision applied to *Jackson*, *Miller*'s companion case, it should also apply him, Flowers cites the following statement from *Tyler v. Cain*: "The new rule becomes retroactive, not by the decisions of the lower court, or by the combined action of the Supreme Court and the lower courts, but simply by the actions of the Supreme Court."  (Flowers's Reply at 5 (citing *Tyler v. Cain*, 533 U.S. 656, 663 (2001)).  In *Tyler*, the Supreme Court was asked to determine whether the rule in *Cage v. Louisiana*, 498 U.S. 39 (1990)—which held that "a jury instruction is unconstitutional if there is a reasonable likelihood that the jury understood the instruction to allow conviction without proof beyond a reasonable doubt[]"—was "'made retroactive to cases on collateral review by the Supreme Court.'"  *Tyler*, 533 U.S. at 658–59 (quoting 28 U.S.C. § 2244(b)(2)(A)).  But *Tyler*'s holding applies to retroactivity required by § 2244(b)(2)(A) for a successive habeas petition.  *Id.* at 662–63.  That provision states that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless . . . the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable . . . ."  § 2244(b)(2)(A).  The Supreme Court consistently confined its reasoning to the language of "made retroactive to cases on collateral review by the Supreme Court[]" used in § 2244.  *See id.* at 659 (quoting § 2244(b)(2)(A) in the statement of the issue to be decided); 662 (stating that "[b]ased on the plain meaning of the text [referring to § 2244(b)(2)(A)] read as a whole, we conclude that 'made' means 'held' and, thus, the requirement is satisfied only if [the Supreme] Court has held that the new rule is retroactively applicable to cases on collateral review."); 663

("Quite significantly, under this provision [referring to § 2244(b)(2)(A)], the Supreme Court is the only entity that the can "make" a new rule retroactive." (quotations and alterations omitted)).

Unlike the petitioner in *Tyler*, Flowers is not before the Court on "a second or successive habeas petition[.]" *See* § 2244(b)(2)(A). The fact that the Supreme Court in *Tyler* consistently referred to § 2244(b)(2)(A) suggests that expanding its statement that only the Supreme Court can make a new rule retroactive to Flower's first § 2254 habeas petition is not appropriate. *See also Morgan*, 713 F.3d 1365 (denying petitioner authorization to file a second or successive motion under 28 U.S.C. § 2255 and § 2244 on the grounds that *Miller* makes his sentence unconstitutional and stating that "*Miller* has not been made retroactive on collateral review[,]" citing *Tyler*, 533 U.S. at 662). And even if the quoted language in *Tyler* is not limited to a second or successive petition, it does not support the retroactive application of *Miller*. If anything, the language from *Tyler* suggests that because *Miller* did not specifically hold that it applied retroactively, the fact that it remanded *Jackson* for further proceedings is not dispositive of the retroactivity issue. *See Martin*, 2013 WL 5653447, at *15 n.16 (citing *People v. Carp*, 828 N.W.2d 685, 712–13 (Mich. Ct. App. 2012)).

Flowers also argues that because the conviction in *Jackson*—*Miller*'s companion case—was final before the *Miller* case was determined, "[h]ad *Miller* not applied retroactively to cases on collateral review, [the petitioner in the companion case] would have been precluded from the relief the Court granted to him." (Flowers's Reply at 6). As described above, final means "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith*, 479 U.S. at 321 n.6. *Jackson* was pending before the Supreme Court when *Miller* was decided, which is how it was decided at the same time as *Miller*. *See Jackson*, 132 S. Ct. 548. Under that

20

procedural posture, the petition for certiorari not been finally denied with respect to the conviction and sentence at issue in *Jackson*.  Therefore, *Jackson* was not final for the purposes of retroactivity under *Teague*.  *See Griffith*, 479 U.S. at 321 n.6.

Finally, Flowers argues that he and the petitioner in *Jackson* are similarly situated because "[b]oth defendants were sentenced by state trial courts to mandatory life without the possibility of parole as juveniles and exhausted all means of direct review before filing for collateral review of their cases."  (Flowers's Reply at 6).  In support, Flowers cites the following quote from *Teague*: "[O]nce a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated."  (*Id.* (quoting *Teague*, 489 U.S. at 300)).  But Flowers and the petitioner in *Jackson* are not similarly situated because Flowers, unlike the petitioner in *Jackson*, was not awaiting a decision from the United States Supreme Court when *Miller* was decided.

### 2.   Whether the Cases Relied on in *Miller* Dictate that *Miller* Should Be Applied Retroactively

Flowers argues that each of the "two strands of precedent[]" relied on in *Miller* have been applied retroactively, and therefore *Miller* should be applied retroactively.  (Flowers's Reply at 6 (quoting *Miller*, 132 S. Ct. at 2463)).  Flowers cites no authority for this proposition, and the test set out by *Teague* and used in the Supreme Court's own analysis of retroactivity counsels the more nuanced determination the Court has used above.  *Teague*, 489 U.S. at 300–10; *see also Caspari*, 510 U.S. at 390.

The first strand of cases cited by *Miller* includes *Atkins*, *Roper*, and *Graham*.  (Flowers's Reply at 6–7).  These cases were applied retroactively under the reasoning used in the *Teague* analysis above.  As *Miller* stated and Flowers acknowledged, these cases "adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders

21

and the severity of a penalty." *Miller*, 132 S. Ct. at 2463; (Flowers's Reply at 6). But in *Miller*, the Supreme Court specifically noted that it was not barring "a penalty for a class of offenders or type of crime—as, for example, [it] did in *Roper* or *Graham*." *Miller*, 132 S. Ct. at 2471. *Atkins*, which prohibited a mentally disabled individual from being sentenced to death, likewise prohibited a specific penalty for a class of offenders. *Atkins*, 536 U.S. at 321. The reason that *Atkins*, *Roper*, and *Graham* were applied retroactively—because they banned a specific punishment from being applied to either a class of offenders or type of crime—does not apply to *Miller*. The Supreme Court specifically held that its decision in *Miller* does not prohibit the penalty of life without parole from being applied to juveniles. *Miller*, 132 S. Ct. at 2469. Instead, a sentencer must consider the defendant's status as a juvenile in its sentencing decision. *Id.* Therefore, although *Atkins*, *Roper*, and *Graham* were applied retroactively, *Miller* cannot be applied retroactively for the same reason.

The second strand of cases relied on in *Miller* require "sentencing authorities [to] consider the characteristics of a defendant and the details of his offense before sentencing him to death." *Id.* at 2463–64 (citations omitted); *see also* (Flowers's Reply at 7). Flowers argues these cases were applied retroactively, and therefore, *Miller* should be as well. (Flowers's Reply at 7). In support, Flowers cites several Supreme Court decisions that have held or "elaborated on the requirement that capital defendants have an opportunity to advance, and the judge or jury a chance to assess, any mitigating factors, so that the death penalty is reserved only for the most culpable defendants committing the most serious offenses." *Miller*, 132 S. Ct. at 2467 (discussing, *inter alia*, *Sumner v. Shuman*, 483 U.S. 66 (1987); *Eddings v. Oklahoma*, 455 U.S. 104 (1982); *Lockett v. Ohio*, 483 U.S. 586 (1978); *Woodson v. North Carolina*, 428 U.S. 280

22

(1976); *see also* (Flowers's Reply at 7 (citing the same cases)).[8]  Flowers argues that those cases

applied retroactively.  (Flowers's Reply at 7 (citing *Songer v. Wainwright*, 769 F. 2d 1488 (11th

Cir. 1985); *Thigpen v. Thigpen*, 541 So. 2d 465, 466 (Ala. 1989)).  But the cases Flowers cites

that apply this "second strand" of cases retroactively are not instructive.  The courts in *Thigpen*

and *Songer* did not conduct an analysis of the retroactive applicability of the Supreme Court

cases they considered.  *See generally Songer*, 769 F. 2d 1488; *Thigpen*, 541 So. 2d at 466.  As

stated above, the analysis of whether a new rule from the United States Supreme Court is applied

retroactively does not rely strictly on the holdings of the Supreme Court's previous cases.

Flowers's argument that because the two strands of cases relied on by the United States

Supreme Court in *Miller* were applied retroactively, *Miller* should likewise be applied

retroactively is without merit.  Instead, the appropriate method for analysis is that articulated by

*Teague* and its progeny.  *See Teague*, 489 U.S. at 300–10; *see also Caspari*, 510 U.S. at 390.

## III.   CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal a denial of his petition unless he is

granted a Certificate of Appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P.

22(b)(1).  A COA cannot be granted unless the petitioner "has made a substantial showing of the

denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, "[t]he

petitioner must demonstrate that reasonable jurists would find the district court's assessment of

the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

---

[8]   Flowers cites *Eddings v. Oklahoma*, 436 U.S. 921 (1978), which denies a petition for
certiorari.  (Flowers's Reply at 7).  The Court presumes Flowers intended to cite to *Eddings v.
Oklahoma*, 455 U.S. 104 (1982), which discusses the mitigating circumstances considered in
death penalty cases, and which was cited by the Supreme Court in *Miller*.  *See Miller*, 132. S. Ct.
at 2467.

In this case, the Court acknowledges that reasonable jurists could find—and have found—that *Miller* applies retroactively, in contrast to this Court's determination. *See e.g.*, *Hill v. Snyder*, No. 10-14568, 2013 WL 364198, at *2 n.2 (E.D. Mich. Jan. 30, 2013) (stating that it would find *Miller* retroactive on collateral review, although the case at bar was on direct review); *Chambers*, 831 N.W.2d at 331–42 (Justice Paul H. Anderson dissenting and concluding that the new rule in *Miller* is substantive rather than procedural); *State v. Ragland*, 836 N.W.2d 107, 114–17 (Iowa 2013) (holding *Miller* applies retroactively).  For this reason, and consistent with other judges in this District, the Court recommends that Flowers be granted a COA in this matter. *See Martin*, 2013 WL 5653447, at *15 n.15; *Thompson* R&R at 25.

## IV.    RECOMMENDATION

Accordingly, based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Flowers's Petition for habeas relief under 28 U.S.C. § 2254 [Doc. No. 1] be **DENIED**;

2.    This action be **DISMISSED WITH PREJUDICE**; and

3.    If this Report and Recommendation is adopted, a COA should be **GRANTED**.


Dated: February 3, 2014

 s/Steven E. Rau
STEVEN E. RAU
United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by     **February 18, 2014,**  a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the

objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.