UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Brian Lee Flowers,

        Petitioner,

v.                                                      Civil No. 13-1508 (JNE/SER)
                                                    ORDER

Tom Roy, Commissioner of Corrections,

        Respondent.

---

      Petitioner Brian Lee Flowers is a Minnesota state prisoner who was convicted by a jury of the 2008 murders of Katricia Daniels and her 10-year old son, Robert Shepard.  Flowers, who was 16 years old at the time of the murders, was sentenced by the Minnesota state court to consecutive, mandatory terms of life imprisonment without the possibility of release.

      After Flowers' appeal was denied and his conviction and sentence had become final, the Supreme Court announced in *Miller v. Alabama*, 132 S.Ct. 2455 (2012) that the mandatory imposition of a sentence of life imprisonment without the possibility of parole on a juvenile violates the Eighth Amendment's prohibition on cruel and unusual punishment.

      Flowers subsequently filed with this Court a petition for a writ of habeas corpus under 28 U.S.C. § 2254, arguing that *Miller* applies retroactively to his case and seeking re-sentencing by the Minnesota state trial court. ECF No. 1.  The state Respondent responded in opposition to the petition. ECF Nos. 7, 8.  The matter is now before the Court on a Report and Recommendation in which the United States Magistrate Judge recommends that Flowers' petition be denied. ECF No. 17.  Flowers timely objected. ECF No. 18.

      The Court declines to adopt the Report and Recommendation.  For the reasons discussed below, the petition is granted.

**Background**

Following the killings of Daniels and Shepard in their Minneapolis home in 2008, 16-year old Flowers and 17-year old Stafon Thompson were both indicted by the Hennepin County Grand Jury on two counts of first-degree premeditated murder and two counts of first-degree murder while committing or attempting to commit aggravated robbery. *State v. Flowers*, 788 N.W.2d 120, 124 (Minn. 2010); *State v. Thompson*, 788 N.W.2d 485, 488 (Minn. 2010). Flowers was charged alternatively as a principal and under an aiding and abetting theory. *Flowers*, 788 N.W.2d at 124.

In Minnesota, juveniles 16 years of age and older who are accused of first-degree murder are automatically prosecuted as adults. Minn. Stat. §§ 260B.007, subd. 6(b), 260B.101, subd. 2. Flowers and Thompson were tried separately in Hennepin County District Court. At the conclusion of Flowers' trial in 2009, the jury convicted him on all four counts of first-degree murder, as well as on two counts of the lesser-included offense of second-degree intentional murder. *Flowers*, 788 N.W.2d at 128. As a Minnesota statute required the trial court to impose a sentence of "life imprisonment without the possibility of release" on any offender convicted of first-degree premeditated murder, Minn. Stat. § 609.106, subd. 2(a), Flowers was accordingly sentenced to two consecutive terms of life without parole.[1]

---

[1] Flowers asserts in his petition that he was sentenced to two consecutive, mandatory terms of life imprisonment without the possibility of parole, but he has submitted no documents from the Minnesota trial court that imposed his sentence. The Minnesota Supreme Court decision affirming his conviction indicates only that "[t]he [Hennepin County] district court sentenced Flowers to two consecutive life terms in prison for the premeditated murder of Daniels and the premeditated murder of Shepard," *Flowers*, 788 N.W.2d at 128; it does not specify whether that sentence was imposed with or without the possibility of parole and, crucially, whether it was mandatory or discretionary.
   Nevertheless, the Minnesota Attorney General and the Hennepin County Attorney, representing the Respondent here, state affirmatively in their Response to Flowers' petition that he "was sentenced to consecutive *mandatory* terms of life in prison—*without the possibility of*

Flowers appealed directly to the Minnesota Supreme Court. *See* Minn. Stat. § 632.14. There, Flowers challenged his conviction on three grounds, but made no argument regarding the constitutionality of his sentence. *Flowers*, 788 N.W.2d at 122. The Minnesota Supreme Court dismissed the appeal and affirmed his conviction in 2010. *Id.* at 134. Flowers then filed a petition for a writ of certiorari with the United States Supreme Court. *Flowers v. Minnesota*, 131 S.Ct. 2460 (2011) (mem.). The Supreme Court denied the petition, and Flowers' conviction and sentence therefore became final, in May of 2011. *Id.*

In June of 2012, the Supreme Court issued its decision in *Miller v. Alabama*, in which it holds that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishment.'" 132 S.Ct. at 2460. Under *Miller*, "a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders" is unconstitutional because, "[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Id.* at 2469.

As a result, while *Miller* "does not categorically bar" imposing a sentence of life imprisonment without the possibility of parole on a juvenile homicide offender, it does mandate that the sentencer, whether judge or jury, have the discretion to impose a lesser sentence, such as "a lifetime prison term *with* the possibility of parole or a lengthy term of years." *Id.* at 2471, 2474. Further, *Miller* requires that the sentencer's exercise of its discretion be guided by an

---

*parole*—on each of the first degree premeditated murder counts for the killings of Katricia Daniels and Robert Shepard." Respondent's Response at 1, ECF No. 8 (emphasis added).
    As the nature of Flowers' sentence is thus undisputed, and the parties' representations on the matter are consistent with Minnesota's statutory sentencing scheme mandating "life imprisonment without the possibility of release" for first-degree premeditated murder, Minn. Stat. § 609.106, subd. 2(a), the Court considers the fact that Flowers was sentenced to mandatory life without parole to be established.

3

"individualized consideration" of the offender's "age and age-related characteristics and the nature of [his] crime . . . ." *Id.* at 2469-70. Relevant issues for the sentencer's consideration could include: the offender's "chronological age and its hallmark features – among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; "the family and home environment that surrounds him"; "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; the "incompetencies associated with youth," such as "his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"; and "the possibility of rehabilitation." *Id.* at 2468. The Supreme Court expressed the expectation that, given "children's diminished culpability and heightened capacity for change," granting the sentencer the discretion to determine a proportionate punishment and requiring him or her to take these and related matters into account in doing so will make "appropriate occasions for sentencing juveniles to th[e] harshest possible penalty uncommon." *Id.* at 2469.

*Miller* thus renders Minnesota's statutory scheme mandating a sentence of "life imprisonment without the possibility of release" for all offenders convicted of first degree premeditated murder unconstitutional as applied to juvenile offenders. *See Chambers v. State*, 831 N.W.2d 311, 323 (Minn. 2013) (acknowledging the same). What has been less clear, though, is whether *Miller* is of any benefit to juvenile homicide offenders like Flowers who, at the time *Miller* was issued in June 2012, had exhausted their direct appeals and were already serving mandatory terms of life without parole in Minnesota and other jurisdictions. That question has split federal and state courts across the country.

4

The Eighth Circuit has not yet addressed the question of *Miller* retroactivity.[2] But the Minnesota Supreme Court has, determining in May of 2013 in *Chambers v. State* that *Miller* does not apply retroactively so as to entitle a juvenile homicide offender whose statutorily-mandated sentence of life without parole was already final when *Miller* was announced to relief in state postconviction proceedings. 831 N.W.2d at 331.

In June of 2013, less than a month after the *Chambers* decision and days shy of the one-year anniversary of *Miller*, Flowers filed his petition for a writ of habeas corpus here under 28 U.S.C. § 2254.

## Discussion

Twenty-eight U.S.C. § 2254 provides a mechanism for "a person in custody pursuant to the judgment of a State court" to seek relief in the federal courts "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Flowers' petition asserts that he is in state custody in violation of the Constitution because the mandatory sentence of life without parole imposed on him by the Minnesota state court violates the Eighth Amendment. As a remedy for this constitutional violation, Flowers

---

[2]    In *Johnson v. U.S.*, 720 F.3d 720 (8th Cir. 2013), the Eighth Circuit considered the issue of *Miller* retroactivity on a petition brought by a federal prisoner under 28 U.S.C. § 2244(b)(3) seeking authorization to file a second or successive petition for a writ of habeas corpus. In that posture, the prisoner, who had been sentenced to mandatory life without parole as a juvenile, was required to make a "prima facie showing" that *Miller* is "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).

With the government concurring with the prisoner that *Miller* is retroactive, the Eighth Circuit determined that he had met his burden and authorized him to file a second or successive habeas petition to assert the *Miller* retroactivity claim in the district court. In so doing, the Eighth Circuit emphasized that it had decided only that the prisoner had made a prima facie showing and cautioned that that decision should not be viewed as an indication of how it may address *Miller* retroactivity in a different posture.

5

does not argue that his conviction should be vacated or that he should be released; rather, he seeks re-sentencing in the Hennepin County District Court in accordance with the discretionary sentencing process outlined in *Miller*.

Since Flowers' conviction and sentence have been final for nearly three years, his entitlement to this relief here turns on two questions: (1) whether *Miller* applies retroactively; and (2) whether his petition satisfies the procedural requirements of 28 U.S.C. § 2254.

The Court turns now to these questions.

### I. 28 U.S.C. § 2254.

Before undertaking an analysis of the merits of Flowers' claim that *Miller* applies retroactively to cases like his on collateral review, it is necessary to first consider the "general prerequisites for federal habeas corpus which are unrelated to the merits of the particular claim . . . ." *Lambrix v. Singletary*, 520 U.S. 518, 524 (1997). Relevant here are the exhaustion requirement of 28 U.S.C. § 2254(b) and the deference to state court adjudications codified at § 2254(d).

#### A. Exhaustion of state remedies.

As an initial matter, and based on principles of comity and federalism, a federal court generally may not grant a writ of habeas corpus to a state prisoner who has failed to "exhaust[] the remedies available in the courts of the State" before bringing his § 2254 action. 28 U.SC. § 2254(b)(1)(A).

Flowers concedes that he could have, but did not raise his *Miller* claim in the Minnesota postconviction courts before filing this petition. *See* Minn. Stat. § 590.01, subd. 1 (providing for

postconviction proceeding for prisoner claiming that his sentence violated his federal constitutional or statutory rights on grounds that could not have been raised on direct appeal). *See also Murray v. Wood*, 107 F.3d 629, 632 (8th Cir. 1997) (even without intervening U.S. Supreme Court decision offering a new interpretation of the Eighth Amendment, Minnesota allows Eighth Amendment claims to be brought for first time in a postconviction proceeding). Furthermore, as of the date of this order, Minnesota's process for collateral review of a criminal sentence remains available to Flowers. Minn. Stat. § 590.01, subd. 4 (permitting prisoner to file a postconviction petition up to two years after a United States Supreme Court decision announcing "a new interpretation of federal . . . constitutional or statutory law" that he claims applies retroactively to his case).

It thus appears that Flowers has neither exhausted nor procedurally defaulted his state remedies. In the usual course of a case such as this, a federal court would either dismiss the state prisoner's § 2254 petition without prejudice or issue a stay and hold the petition in abeyance while the petitioner pursues his available state remedies. *Rhines v. Weber*, 544 U.S. 269, 274-78 (2005); *Whatley v. Morrison*, 947 F.2d 869, 870 (8th Cir. 1991).

However, Flowers argues that he should be excused from exhausting his state remedies because, after the Minnesota Supreme Court decided in *Chambers* that it would not apply *Miller* retroactively, it would have been futile for him to bring a state postconviction petition pressing the same argument. *See Padavich v. Thalacker*, 162 F.3d 521, 522 (8th Cir. 1998) (noting that exhaustion is not a rule of jurisdiction and "recogniz[ing] the futility of requiring a habeas petitioner to exhaust state remedies when the state court has recently decided the same legal question adversely to the petitioner under nearly identical facts"). Since briefing closed, Flowers' futility argument has gained even more support, as the Minnesota Supreme Court

recently reaffirmed *Chambers* in *Nose v. State*, -- N.W.2d --, 2014 WL 1491600, *3-5 (Minn. Apr. 16, 2014).

It is, however, ultimately unnecessary to decide whether Flowers may or should be excused from exhausting his state remedies on futility grounds. The state Respondent has directly addressed Flowers' failure to exhaust:

> The Minnesota Supreme Court in *Chambers v. State*, 831 N.W.2d 311 (Minn., filed May 31, 2013), has definitively held that *Miller v. Alabama* is not retroactive. For that reason, Petitioner has filed a Petition for federal habeas relief with this Court, in lieu of filing a petition for post-conviction relief in Hennepin County District Court. Respondent does not disagree with this; indeed, given that Minnesota Supreme Court decisional law is binding on all district courts in the State of Minnesota, it would appear to be an exercise in futility—and antithetical to judicial economy—for Petitioner to file for post-conviction relief; have that petition be denied; have that denial be summarily affirmed by the Minnesota Supreme Court.

Respondent's Response at 2, ECF No. 8.

By explicitly agreeing that Flowers should not be made to exhaust his state remedies and that the Court should proceed to deciding the merits of his federal petition, the Respondent has waived the requirement that Flowers first present his claim to the state courts. *See* 28 U.S.C. § 2254(b)(3) (waiver of exhaustion requirement must be express and through counsel).

### B. Standard of review.

In arguing that the Court should deny Flowers' petition on the merits, the Respondent relies heavily on the deference to state court adjudications that is codified in the federal habeas statute at 28 U.S.C. § 2254(d). That provision bars a federal court sitting in habeas from granting a state prisoner's petition "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States . . . ." Therefore, according to the Respondent, even if this Court were to find that *Miller* is retroactive to cases on collateral review, it may not grant Flowers the relief he seeks here because the Minnesota Supreme Court's decision to the contrary in *Chambers* is neither "contrary to" nor an "unreasonable application of" Supreme Court precedent.

Twenty-eight U.S.C. § 2254(d), however, does not apply to Flowers' petition. That provision plainly applies only where the claim presented in a federal petition "was adjudicated on the merits in State court proceedings . . . ." Flowers' claim was not, and, as noted above, the Respondent has waived its right to demand that it be before this Court may consider it. Furthermore, and contrary to the main of the Respondent's argument, the consequence of that waiver is not the substitution of the Minnesota Supreme Court's adjudication of the *Chambers* petitioner's claim for that of Flowers'. The *Chambers* petitioner is not before this Court, and so this petition provides no occasion to review the reasonableness of the state court's adjudication of the *Chambers* petitioner's claim.

With no decision from the state court to which to defer, the habeas statute tasks this Court with conducting a de novo review of Flowers' claim. *Cf. Panetti v. Quarterman*, 551 U.S. 930, 953-54 (2007). The question for that review is whether Flowers has met his burden of establishing that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

For the reasons discussed below, he has.

**II.     *Miller* retroactivity.**

The retroactivity of a constitutional decision in the realm of criminal law like *Miller* is determined according to the principles adopted by the Supreme Court in *Teague v. Lane*, 489 U.S. 288 (1989) and refined in a line of cases that follow from it.

Since *Teague*, the Supreme Court has adhered to an approach to retroactivity that proceeds from two sets of distinctions. The first is between cases on direct review and those on collateral review. The former category refers to criminal cases that are pending in the trial courts or at varying stages of direct appeal, up through the final disposition of a petition for a writ of certiorari by the Supreme Court or the expiration of the time period in which it could be sought. The latter encompasses cases in which the conviction and sentence have already become final and relief is sought through postconviction proceedings, such as a petition for a writ of habeas corpus.

The second distinction is between an "old constitutional rule" and a "new constitutional rule." An old rule is "merely an application of the principle that governed a prior decision to a different set of facts," and is therefore often seen "where the beginning point of [the] analysis is a rule of general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts . . . ." *Chaidez v. U.S.*, 133 S.Ct. 1103, 1107 (2013) (quoting *Teague*, 489 U.S. at 301 and *Wright v. West*, 505 U.S. 277, 309 (1992) (Kennedy, J., concurring in judgment)). In contrast, a new rule is "not *dictated* by precedent . . . ." *Teague*, 489 U.S. at 301. In other words, a new rule is one that "breaks new ground or imposes a new obligation on the States or the Federal Government," *Teague*, 489 U.S. at 301, and therefore would not have been "apparent to all reasonable jurists" before it was announced, *Lambrix*, 520 U.S. at 527-28.

The *Teague* approach to retroactivity, then, is as follows: a new constitutional rule is always applied to cases that are on direct review at the time it is announced, but generally not to cases on collateral review. 489 U.S. at 310 (endorsing the position that, when a conviction has already become final, it is "better policy to apply the law prevailing at the time of the conviction rather than the new law prevailing at the time of the [postconviction] petition"). However, this general presumption against retroactivity for cases on collateral review is subject to two "exceptions," for new substantive rules and new "watershed" procedural rules. *Id.*

Under the principles and holdings of *Teague* and its progeny, *Miller* applies retroactively to cases like Flowers' on collateral review for either or both of the reasons discussed below.

### A. *Jackson v. Hobbs.*

First, with *Teague*, the Supreme Court made the retroactivity of a new constitutional rule a threshold decisional issue for the court that announces the new rule. 489 U.S. at 300. In other words, where a petitioner in a habeas proceeding seeks to establish a new constitutional rule, the court "will neither announce nor apply the new rule sought by [the petitioner] unless it would fall into one of [the] two narrow exceptions" recognized in *Teague*.[3] *Saffle v. Parks*, 494 U.S. 484, 487-88 (1990).

It is enough to decide the question of *Miller* retroactivity, then, to note that in that case, the Supreme Court announced a new constitutional rule in a habeas proceeding, applied it to the habeas petitioner who sought it, and granted him the same relief that Flowers seeks here.

---

[3] In fact, in *Teague* itself, the Supreme Court declined to consider the merits of a new constitutional rule proposed by a habeas petitioner because it would not have fallen within either of the two exceptions to the general presumption against retroactivity on collateral review. 489 U.S. at 316 ("Because a decision extending the fair cross section requirement to the petit jury would not be applied retroactively to cases on collateral review under the approach we adopt today, we do not address petitioner's claim.").

11

In *Teague* terms, the rule against mandatory life without parole for juvenile homicide offenders that the Supreme Court announced in *Miller* is new.[4] It was a development in the Supreme Court's Eighth Amendment jurisprudence that was supported, but not dictated, by the precedents that existed prior to *Miller*'s issuance in June of 2012. In other words, under pre-June 2012 Eighth Amendment case law, sentencing courts would not have been compelled to conclude that imposing life imprisonment without the possibility of parole on a juvenile homicide offender pursuant to a mandatory sentencing scheme was unconstitutional. Because *Miller* broke that new ground, its holding is a new constitutional rule.

And that new constitutional rule was announced in a habeas proceeding and applied to a habeas petitioner. The Supreme Court decision commonly (and herein) referred to as *Miller* is in fact a consolidated opinion that was issued in two companion cases: *Miller v. Alabama* and *Jackson v. Hobbs*. Both of those cases involved a 14-year old appellant who had been convicted of murder and sentenced to a mandatory term of life imprisonment without the possibility of parole, and both sought a ruling from the Supreme Court that those mandatory sentences were unconstitutional on Eighth Amendment grounds. *Miller*, 132 S.Ct. at 2460. What distinguishes the two cases, however, is their procedural postures: *Miller* was before the Supreme Court on direct appeal from the Alabama Supreme Court, while *Jackson* was there on appeal from the denial of a state habeas petition by the Arkansas postconviction courts. *Id.* at 2461-63.

Crucially, though *Miller* was on direct review and *Jackson* on collateral review, the Supreme Court applied its new constitutional rule prohibiting mandatory life without parole for juveniles equally to both cases and granted relief to both appellants. In *Jackson* in particular, the

---

[4] The parties here are in agreement on this point. *See* Petitioner's Reply at 8-9, ECF No. 12; Respondent's Response at 4, ECF No. 7. There is similarly little, if any, debate on this point among the courts to have considered the question of *Miller* retroactivity.

Supreme Court reversed the Arkansas postconviction courts' denial of habeas relief and remanded for further proceedings. *Id.* at 2475. On remand, the Arkansas Supreme Court sent the case back to the state trial court for re-sentencing in accordance with the *Miller* opinion. *Jackson v. Norris*, 2013 Ark. 175, --- S.W.3d ----, 2013 WL 1773087 (Ark. Apr. 25, 2013).

The Supreme Court's disposition of *Jackson* is dispositive here. "[I]mplicit in the retroactivity approach [the Supreme Court] adopt[ed] in *Teague*] is the principle that habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to *all* defendants on collateral review through one of the two exceptions we have articulated." 489 U.S. at 316. Because "once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated," the *Teague* approach to retroactivity directs the court considering a new rule to "refuse to announce [it] in a given case unless the rule would be applied retroactively to the defendant in the case and to all others similarly situated." *Id.* at 300, 316.

An analysis of the *Miller* rule against the two exceptions articulated in *Teague* is thus unnecessary: by virtue of announcing and applying a new constitutional rule in a habeas proceeding like *Jackson*, the Supreme Court has already made the *Miller* rule retroactive to cases on collateral review like Flowers'.[5] Though the Supreme Court did not explicitly direct the lower courts to apply *Miller* retroactively to cases on collateral review, it may not – and need not – do so where its "holdings logically permit no other conclusion . . . ." *Tyler v. Cain*, 533 U.S. 656, 669 (2001) (O'Connor, J., concurring). That is the case here.

---

[5] Flowers and the petitioner in *Jackson* are similarly situated in the way that matters to a retroactivity analysis: both exhausted their direct appeals, thus making their conviction and sentence final, and have sought postconviction relief through collateral review.

### B. Substantive rule.

Second, even if *Miller*'s retroactivity were an open question that was left to the lower courts to decide in the first instance, the new constitutional rule *Miller* announced is retroactive to cases on collateral review because it falls within the *Teague* exception for new substantive rules.

In contrast to a procedural rule, which governs "the nature, function, and scope of the adjudicatory process," *Teague*, 489 U.S. at 306, a substantive rule of criminal law "places a class of private conduct beyond the power of the State to proscribe . . . or addresses a substantive categorical guarantee accorded by the Constitution . . . ." *Saffle*, 494 U.S. at 494. Though *Miller* undoubtedly has a procedural component, it prescribes a discretionary sentencing process only as a consequence of the substantive rule against the mandatory imposition of life without parole on juveniles that is at its core.

In defining a substantive rule, the Supreme Court has used as the quintessential example a rule that "prohibit[s] a certain category of punishment for a class of defendants because of their status or their offense." *Id.* (quotation omitted). By prohibiting mandatory sentences of life without parole for juvenile homicide offenders, *Miller* does just that. Simply put, *Miller* is a substantive rule because it puts juveniles as a class beyond the reach of criminal statutes like Minn. Stat. § 609.106 that would otherwise impose a mandatory sentence of life without the possibility of release on all offenders convicted of certain types of homicide.

In this sense, it can also be said that *Miller* exempts a juvenile homicide offender from the mandatory minimum sentence of life without parole that he would otherwise face under the sentencing schemes at issue. *See* Beth A. Colgan, Alleyne v. United States, *Age as an Element, and the Retroactivity of* Miller v. Alabama, 61 UCLA L. Rev. Disc. 262 (2013). In the wake of

*Miller*, the sentencer must have the discretion to select an appropriate and proportionate sentence for such a juvenile from a range bound by "a lifetime prison term *with* the possibility of parole or a lengthy term of years" on the low end and by life without parole on the high end.  *Miller*, 132 S.Ct. at 2471.  Far from simply requiring more process before a sentence of life without parole may be imposed on a juvenile, *Miller* thus fundamentally and substantively alters criminal sentencing laws by expanding the range of sentencing options available for these juvenile offenders.

In addition, the Supreme Court has also defined a substantive rule as one that "modifies the elements of an offense . . . ."  *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004).  The elements of an offense include any fact that triggers the application of a mandatory minimum sentence.  *Alleyne v. U.S.*, 133 S.Ct. 2151, 2163 (2013).  In states with the sentencing schemes at issue in *Miller*, the offender's age at the time of the homicide now determines which mandatory minimum applies – either life without parole for an adult, or the lower bound of the sentencing range applicable to a juvenile.  In this way, *Miller* modifies the elements of a homicide offense.

Under any of these articulations, *Miller* falls squarely within *Teague*'s exception to the general presumption against retroactivity for new substantive rules.

## Conclusion

Flowers is in custody pursuant to a state court judgment imposing a mandatory sentence of life without the possibility of release for a homicide offense that he committed when he was 16 years old.  Because *Miller* found such a sentence to violate the Eighth Amendment and that decision applies retroactively to cases on collateral review, Flowers has established that he is "in custody in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2254(a).

Based on the files, records, and proceedings therein, and for the reasons discussed above, IT IS ORDERED THAT:

1.	Petitioner's Petition for a Writ of Habeas Corpus [ECF No. 1] is GRANTED.


LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: April 30, 2014                                              s/Joan N. Ericksen                    
                                                                              JOAN N. ERICKSEN
                                                                              United States District Judge